**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                       )
GILBERTO MENDEZ-NOLASCO,               )
                                       )
            Petitioner,                )
                                       )        Civil Action
v.                                     )        No. 20-10055-PBS
                                       )
JOSEPH MCDONALD JR.,                   )
Plymouth County Sheriff                )
                                       )
            Respondent.                )
_____)

<u>**ORDER**</u>

February 12, 2020

Saris, D.J.

Petitioner Gilberto Mendez-Nolasco brings this habeas
petition seeking relief pursuant to the Court's declaratory
judgment in <u>Brito v. Barr</u>, No. 19-11314, 2019 WL 6333093, at *8
(D. Mass. Nov. 27, 2019) ("<u>Brito</u>"). Petitioner argues that his
immigration bond hearing did not meet due process standards
because he was required to bear the burden of proof, rather than
the Government. Petitioner claims he was prejudiced by this
error and so is entitled to receive a new bond hearing.
Respondent contends that Mendez-Nolasco cannot demonstrate
prejudicial injury because there is sufficient evidence that his

1

release would pose a danger to the community.[1] For the reasons

stated below, the Court hereby **ALLOWS** the petition (Dkt. 1) and

**ORDERS** that Petitioner be released unless he receives, within

ten calendar days, a bond hearing that complies with the

requirements of Brito.

## LEGAL STANDARD

Under 8 U.S.C. § 1226(a), "an alien may be arrested and

detained pending a decision on whether the alien is to be

removed from the United States." After ICE makes the initial

decision to detain an alien, the alien may request a bond

hearing in immigration court at any time before a removal order

becomes final. 8 C.F.R. § 236.1(d)(1). In Pensamiento v.

McDonald, the Court held that constitutional due process

"requires placing the burden of proof on the government in

§ 1226(a) custody redetermination hearings." 315 F. Supp. 3d

684, 692 (D. Mass. 2018).

In a subsequent class action, Brito v. Barr, the Court

entered the following declaratory judgment:

> [A]liens detained pursuant to 8 U.S.C. § 1226(a)
> are entitled to receive a bond hearing at which the
> Government must prove the alien is either dangerous by
> clear and convincing evidence or a risk of flight by a

---

[1] Immigration bond may also be withheld where the non-citizen is
a risk of flight. See Brito, 2019 WL 6333903, at *4. The
immigration judge here denied bond based solely on "[d]anger to
person or property," Dkt. 7-2, and Respondent addresses only
danger to the community. Accordingly, this opinion does not
address risk of flight.

> preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community. At the bond hearing, the immigration judge must evaluate the alien's ability to pay in setting bond above $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances.

2019 WL 63333093, at *8. The Court held that class members who had received an unlawful hearing could seek relief by "show[ing] prejudice via an individual habeas petition." Brito v. Barr, 395 F. Supp. 3d 135, 148 (D. Mass. 2019).

To establish prejudice, a petitioner must show that a due process violation could have affected the outcome of the custody redetermination hearing. See Doe v. Tompkins, No. 18-cv-12266, 2019 U.S. Dist. LEXIS 22616, at *3-4 (D. Mass. Feb. 12, 2019) (citing Pensamiento v. McDonald, 315 F. Supp. 3d 692, 693 (D. Mass. 2018); then citing Singh v. Holder, 638 F.3d 1196, 1205 (9th Cir. 2011)). The prejudice inquiry requires the court to conduct "an individualized analysis of [the petitioner's] criminal history and personal characteristics." Brito, 395 F. Supp. 3d at 147.

## FACTS

Petitioner is a native and citizen of Guatemala. He entered the United States when he was twenty-one years old and has continuously resided in Lynn, Massachusetts for the past seventeen years. He has lived at the same address in Lynn for

the last five years and has extended family in the area. He has been employed as a landscaper and has paid taxes throughout his time living in the United States. He does not currently have legal status in the United States.

Between 2004 and 2016, Petitioner was charged with crimes in connection with five incidents.[2] In November 2004, Petitioner was charged with Unlicensed Operation of a Motor Vehicle, Leaving Scene of Property Damage, and Failure to Wear a Seatbelt. He was convicted of the Unlicensed Operation of a Motor Vehicle charge and received a $100 fine.

In February 2005, Petitioner was charged with and convicted for Reckless Operation of a Motor Vehicle and Unlicensed Operation of a Motor Vehicle. He received a one-year suspended sentence with a condition not to drive unless properly licensed. In that incident, he had struck a parked car and then knocked over a small tree that landed on another parked vehicle. He initially told police that the driver had fled the scene before admitting he was the driver after two witnesses identified him.

In September 2006, Petitioner was charged with Operating Under the Influence, Operating Negligently, and Operating after

---

[2] Petitioner's reply brief also references a dismissed 2013 charge for operating after suspended license, Dkt. 8 at 3, but there is no affidavit or police report in the record to support that charge, so the Court does not consider it in its analysis.

a Suspended License. The charges were continued without a finding.

In November 2010, Petitioner was charged with Possession Open Container of Alcohol in a Motor Vehicle, Marked Lanes Violation, Unregistered Motor Vehicle, Operation under the Influence (2nd Offense), and Operating a Motor Vehicle with a License Revoked as a Habitual Traffic Offender. According to the police report, Petitioner was pulled over after driving erratically. He submitted to a breathalyzer test where he produced results of .21%, .15%, and .21%, more than double the legal limit. Petitioner was convicted on all charges except for Marked Lanes Violation and received a six-month suspended sentence for the OUI charge.

In January 2016, Petitioner was charged with Assault and Battery, but the charge was dismissed in April 2016.

Petitioner has been held in immigration detention since October 18, 2019. He received a custody redetermination hearing on December 3, 2019. The court found Petitioner to be a danger to persons or property and denied bond. Petitioner has ongoing removal hearings in immigration court.

### DISCUSSION

In analyzing a detainee's request for a bond redetermination, an immigration judge may consider several factors, including:

(1) Whether the alien has a fixed address in the United
States; (2) the alien's length of residence in the United
States; (3) the alien's family ties in the United States,
and whether they may entitle the alien to reside
permanently in the United States in the future; (4) the
alien's criminal record, including the extensiveness of
criminal activity, the recency of such activity, and the
seriousness of the offenses; (7) the alien's history of
immigration violations; (8) any attempts by the alien to
flee persecution or otherwise escape authorities, and (9)
the alien's manner of entry to the United States.

Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).

Petitioner argues that the result of his bond hearing would
have been different if the Immigration Court had placed the
burden of proof upon the Government. Respondent contends that
the petition should be dismissed because the Petitioner cannot
demonstrate prejudice. Because liberty is at stake, the Court
writes promptly and briefly.

I.    **Danger to the Community**

Pursuant to the Court's holding in Brito, the Government
carries the burden to prove that an alien is dangerous by clear
and convincing evidence. See Brito, 2019 WL 6333903, at *4.

Here, Petitioner's offenses related to driving recklessly
or while intoxicated are certainly serious charges. See
Matter of Siniauskas, 27 I. & N. Dec. 207, 209 (BIA 2018)
("Driving under the influence is a significant adverse
consideration in bond proceedings."). Nonetheless, the Court is
persuaded that the allocation of the burden in this case could
have changed the result. Petitioner's last driving-related

6

charge was in 2010, almost ten years ago. Following that charge,

Petitioner completed the "second offender's program," which

includes a two-week in-patient residential program, and has not

been charged with an alcohol-related driving offense since.

Evidence of rehabilitation is relevant when considering a past

criminal history for purposes of a bond determination. See

Siniauskas, 27 I. & N. Dec. at 209. As to the dismissed Assault

and Battery charge from 2016, Petitioner submits that the facts

of that case were not presented to the Immigration Judge at the

bond hearing and Respondents have offered no evidence to the

contrary.

Petitioner has demonstrated that the burden allocation

"could have affected" the Immigration Court's assessment of

dangerousness, which must be found by the heightened burden of

clear and convincing evidence. See Doe, 2019 U.S. Dist. LEXIS

22616, at *3-4.

**CONCLUSION**

Petitioner was prejudiced by the errors in his bond hearing

and therefore is entitled to a new bond hearing. The petition

for a writ of habeas corpus is accordingly **ALLOWED**. The Court

**ORDERS** that Petitioner be released unless he receives, within

ten calendar days, a bond hearing that complies with the

requirements of Brito v. Barr, No. 19-11314, 2019 WL 6333093, at

*8 (D. Mass. Nov. 27, 2019).

7

SO ORDERED.


                                        /s/ PATTI B. SARIS
                                        Patti B. Saris
                                        United States District Judge